UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CECIL BRADLEY MATHEWS,

    Petitioner,

vs.                         Case No. 3:13-cv-1196-J-39MCR

SECRETARY, DOC, et al.,

    Respondents.

**ORDER**

Petitioner initiated this action by filing a pro se Petition (Petition) (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 22, 2013.[1] He is proceeding on an Amended Petition (Amended Petition) (Doc. 16), with an Appendix (Doc. 16-1).[2] Petitioner challenges a 2006 state court (Clay County) judgment of conviction for second degree murder with a firearm. In the Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus

---

[1] The Court gives pro se inmate petitioners the benefit of the mailbox rule, see Houston v. Lack, 487 U.S. 266, 276 (1988) (filed on the date he signed it and presumably handed it to prison authorities for mailing to this Court). In this instance, the Petition is dated March, 2013, and the certification of mailing is also recorded as March, 2013. See 28 U.S.C. § 2244(d). Since a specific date is not recorded by Petitioner, the Court assumes that he signed and dated the Petition on March 22, 2013, as the Petition is stamped filed on that date by the Clerk.

[2] The Court hereinafter refers to the documents attached to the Appendix as "App."

as Untimely (Response) (Doc. 42),[3] Respondents argue that the Petition must be dismissed as untimely. Petitioner has submitted a Reply in Opposition (Reply) (Doc. 52). See Order (Doc. 26).

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[3] The Court hereinafter refers to the Exhibits (Doc. 47) submitted in support of the Response as "Ex."

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

On April 17, 2006, Petitioner was indicted for one count of first degree murder. Ex. E. On May 31, 2006, he entered into a negotiated plea of guilty to the lesser included charge of second degree murder, with a negotiated sentence of twenty-five years incarceration, with a minimum mandatory term of twenty years. Ex. F; Ex. G. On June 15, 2006, Petitioner was adjudicated guilty of second degree murder with a firearm and sentenced to twenty-five years of imprisonment with a minimum mandatory term of twenty years pursuant to a plea agreement. Ex. H; Ex. I. Petitioner did not file a direct appeal. Thus, his judgment became final thirty days later on July 17, 2006.[4] See Fla. R. App. P. 9.140(b)(3); Saavedra v. State, 59 So.3d 191, 192 (Fla. 3rd DCA 2011); Gust v. State, 535 So.2d 642, 643 (Fla. 1st DCA 1988) (holding that, when a defendant does not file a direct appeal, the conviction becomes final when the thirty-day period for filing a direct appeal expires). Petitioner's one-year limitation period began to run on Tuesday, July 18, 2006, and ran until it expired on Tuesday, July 17, 2007.

---

[4] Thirty days elapsed on July 15, 2006, however the 15th of July fell on a Saturday; therefore, the judgment became final on Monday, July 17, 2006.

3

Although Petitioner filed a petition for belated appeal, prior to the expiration of the limitation period, Ex. J, it "does not qualify as an application for collateral review." Danny v. Sec'y, Fla. Dep't of Corr., 811 F.3d 1301, 1304 (11th Cir. 2016). As a result, there was no statutory tolling of the one-year statute of limitation by the filing of a motion for belated appeal. Simply, "filing a petition for belated appeal of an order denying state collateral relief does not toll the federal limitation period for a petition for a writ of habeas corpus." Id. at 1305 (quoting Espinosa v. Sec'y, Dep't of Corr., 804 F.3d 1137, 1141 (11th Cir. 2015)). Furthermore, the First District Court of Appeal denied the petition for belated appeal. Ex. Q; Ex. S. Thus, the state court did not reopen direct review.

Again, the limitations period expired on July 17, 2007. Although Petitioner filed post conviction motions in 2008, these motions did not toll the federal one-year limitation period because it had already expired. Ex. T. See Tinker v. Moore, 255 F.3d 1331, 1334-35 (11th Cir. 2001) (holding that, even though Florida law allows a prisoner two years to file a Rule 3.850 motion, the prisoner must file the motion within one year after his conviction becomes final in order to toll the one-year limitation period), cert. denied, 534 U.S. 1144 (2002); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order

4

to toll the limitations period. A state-court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), cert. denied, 531 U.S. 991 (2000). Thus, this action was not timely filed.

Petitioner apparently makes no claim of equitable tolling. To the extent Petitioner claims his untimely filing of the federal Petition is excused because of counsel's unresponsiveness or ineffectiveness, Reply at 3, 11, in reliance on the holding in Martinez v. Ryan, 132 S.Ct. 1309 (2012), Petitioner's contention is without merit. As noted,

> The Eleventh Circuit has expressly rejected petitioner's argument that Martinez applies to overcome the statute of limitations bar. Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir. 2014) (holding that "the Martinez rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period.").

Sledge v. Jones, No. 3:14-cv92/MCR/CJK, 2015 WL 521057, at *4 (N.D. Fla. Feb. 9, 2015). As a result, the holding in Martinez is inapplicable to this case and does not excuse Petitioner's untimely filing of his Petition. In Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir.), cert. denied, 135 S.Ct. 106 (2014), the Eleventh Circuit explained:

> As our discussion shows, the Martinez rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not

5

> apply to AEDPA's statute of limitations or the tolling of that period. The § 2254 ineffective-trial-counsel claims in Martinez and Trevino were not barred by AEDPA's one-year limitations period. Instead, those § 2254 claims were dismissed under the doctrine of procedural default because the petitioners never timely or properly raised them in the state courts under the states' procedural rules. At no point in Martinez or Trevino did the Supreme Court mention the "statute of limitations," AEDPA's limitations period, or tolling in any way.

Petitioner apparently concedes that his Petition was not timely filed, but argues that the Court should reach the merits of the Petition, claiming "actual innocence" and entitlement to the manifest injustice exception. Amended Petition at 18-20; Reply. He argues that the Court's failure to address the merits of the Petition would result in a fundamental miscarriage of justice. Amended Petition at 20; Reply.  To invoke the fundamental miscarriage of justice exception to AEDPA's statute of limitations, a habeas petitioner must make a credible showing of actual innocence with new evidence that was not available at the time of his trial. See McQuiggin v. Perkins, 133 S.Ct. 1924, 1931-32 (2013). To do so, "a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Id. at 1935 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1985)). This Court summarized the requirements to show gateway innocence:

> "An actual-innocence claim must be supported 'with new reliable evidence—whether

> it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Milton v. Sec'y, Dep't of Corr., 347 Fed. Appx. 528, 530-31 (11th Cir. 2009) (quoting Schlup, 513 U.S. at 324, 115 S.Ct. 851). A "habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House, 547 U.S. at 538, 126 S.Ct. 2064. A court may also consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." Id. at 537, 126 S.Ct. 2064 (quotation omitted).

Letemps v. Sec'y, Fla. Dep't of Corr., 114 F.Supp.3d 1216, 1221 (M.D. Fla. 2015).

As new evidence, Petitioner points to (1) "the expert opinion of Dr. Rickie P. Sander, Appx. A, pgs. 11, 12, 36[;]" (2) "the fact that statements made to [the] detective on Dec. 13th, 2005 were the product of physical and emotional coercion, App. A, 20-22[;] and (3) "exculpatory evidence being erased from the 911 call by the detective, App. A, 22-25." Amended Petition at 18-19. Respondents assert that Petitioner has failed to meet his burden by presenting new evidence as required by Schlup. Response at 15. Pursuant to Schlup and its progeny, Petitioner is required to offer new reliable evidence that was not available at the time of his trial. Certainly claims of an involuntary confession and alleged tampering of 911 calls do not constitute new evidence. Prior to his plea, Petitioner could have claimed that the statements he made to the

7

detective on December 13, 2005 were the product of physical and emotional coercion. Petitioner was present for the interrogation and aware of the detective's interrogation methods. This does not constitute new evidence.[5] This information was readily available at the time of the plea. Also, the 911 calls are not new evidence. They were referenced in the Clay County Sheriff's Office December 20, 2005 report. Ex. E5. Petitioner told Detective Tate about the 911 calls. Id. Thus, Petitioner was fully aware of the 911 calls. Furthermore, the record shows that Petitioner and the detective repeatedly discussed the recorded 911 calls prior to the time of the plea.[6]

Finally, Petitioner refers to the expert opinion of Dr. Sander with regard to his autopsy of the victim as new reliable evidence. Attached to the Amended Petition is a copy of Petitioner's Petition for Writ of Habeas Corpus for Withdrawal of Plea to Correct *Manifest Injustice* (State Petition) (Doc. 16-1). App. A. In ground two of the State Petition, he raised the following claim:

> Petitioner plead guilty to a crime he is actually innocent of due to counsel[']s ineffectiveness in violation of Petitioner's 5th, 6th, 14th Amendment rights when counsel failed to investigate second autopsy doctor

---

[5] The Court reviewed the two interviews, and neither interview evinces improper interrogation methods, threats, or intimidation. Ex. L5; Ex. P5; Ex. Q5.

[6] The Court listened to the recording of Petitioner's 911 call, the call in question, Ex. K5, and the recording does not have any unexplained gaps.

8

> that proves the Petitioner's legal and actual innocence thus resulting in a **_manifest injustice_**.

App. A at 11.

In support of ground two, Petitioner referenced the second autopsy performed by Dr. Sander, and the fact that Dr. Sander sent the report to defense counsel. Id. Petitioner claims that he asked his counsel for a complete copy of the report, but his counsel failed to provide it to him. Id. Petitioner states that he and his family could not locate Dr. Sander before the plea, but Petitioner's family finally contacted Dr. Sander at the "end of 2007[.]" Id.

The record belies Petitioner's assertion that he or his family did not contact Dr. Sander until the end of 2007. The letter from Dr. Sander to Petitioner is dated April 22, 2007, not the end of 2007, and written within the federal one-year limitation period.[7] App. A at 36. It states:

> When the gun shot the round that caused the neck wound of Natalie Mathews, it was next to her face. It could have been self inflicted, either with her index finger or her thumb being on the trigger. The wound is that of an accidental shot rather than from a shot meant to kill her. The gunshot wounds on her body are completely consistent with your story.

---

[7] Petitioner waited three years to present the matter to the state court in a state petition for writ of habeas corpus (dated June 27, 2010) filed with the First District Court of Appeal. Ex. DDD. He presented the issue in the Supreme Court of Florida on March 23, 2012. Ex. XXX.

Id.

The second autopsy report by Dr. Sander is not new evidence. According to Petitioner's own rendition of the facts, the defense hired Dr. Sander to perform a second autopsy, and the results were sent to defense counsel prior to the plea.[8]  Thereafter, defense counsel advised Petitioner concerning his plea.  Under these circumstances, Petitioner is not presenting "new evidence." Instead, Dr. Sander's opinion expressed in his letter simply amounts to a different way of attempting to undermine the credibility of the prosecution's evidence, in particular the credibility of Dr. Margarita Arruza, the Chief Medical Examiner, and her testimony concerning the results of the initial autopsy. There is no new evidence offered that is directly probative of Petitioner's innocence (DNA evidence, forensic evidence, alibi evidence, or a confession).  In this instance, "the basic facts of the evidence existed at the time of trial and is not really new." Kuenzel v. Allen, 880 F.Supp.2d 1205, 1218 (N.D. Ala. 2011), aff'd, 690 F.3d 1311 (11th Cir. 2012).  In this regard, Petitioner has not presented new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.

Alternatively, Petitioner has not presented a credible claim of actual innocence.  Sufficient doubt has not been raised to

---

[8] The procurement of a second autopsy is mentioned in Buford (Tony) A. Pate's Sworn Statement of December 10, 2005.  Ex. H5 at 1-2.

undermine the confidence in the result, or when confronted with Dr. Sander's opinion, the Court is not convinced that no reasonable juror would have convicted Petitioner. See McQuiggin, 133 S.Ct. at 1933. The fundamental miscarriage of justice occurs only in extraordinary cases, resulting in nearly every case claiming actual innocence being rejected. Hannon v. Sec'y, Dep't of Corr., 622 F.Supp.2d 1169, 1201 (M.D. Fla. 2007), aff'd, 562 F.3d 1146 (11th Cir. 2009). Indeed, "[t]his fundamental miscarriage of justice exception is not available unless 'the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" Id. (quoting Ward v. Cain, 53 F.3d 106, 108 (5th Cir.1995) (denying certificate of probable cause) (footnote omitted)). This demanding standard is not easily met.

This Court must consider all the evidence, old and new, incriminating and exculpatory. Letemps, 114 F.Supp.3d at 1221. In undertaking this consideration, the Court concludes that Petitioner has failed to demonstrate that no reasonable juror considering Dr. Sander's opinion could conclude that Petitioner committed the offense of second degree murder. Applying McQuiggin's actual innocence exception to the AEDPA statute of limitation, the Amended Petition is due to be dismissed as untimely. An explanation follows.

Given any presentation of Dr. Sander's opinion, it is logical that the state would present its own expert to refute this

evidence. See Ex. C5, Deposition of Dr. Margarita Arruza; Ex. D5, Office of the Medical Examiner Examination Report. Dr. Arruza testified that the chest wound was the most fatal wound. Ex. C5 at 37. She also stated the bullet took a downward course. Id. at 15. She admitted that bruising may or may not evince a contact wound. Id. at 17. She gave no opinion as to distance.[9] Id. at 20. With regard to the neck wound, she stated the bullet went straight down. Id. at 21. In response to the question as to whether the neck wound was a contact wound, Dr. Arruza stated she found a faint light gray powdery substance. Id. She further explained that it was not a "tight-packed powdery substance[,]" but rather on the outer range because the powder was "very dispersed[.]"[10] Id. at 26.

Additionally, based on the presentation of the factual basis for the plea, the state was prepared to offer evidence that Petitioner had discovered his wife was having an extramarital affair, and he had followed her on December 5, 2005, and saw her with her lover. Ex. G at 11. He returned home and confronted his wife. Id. at 12. With regard to the shooting, the state was prepared to offer evidence of the following:

> Your Honor, the evidence also showed that afer she was killed -- she was actually shot twice, once in the chest and once in the neck.

---

[9] The victim was wearing a black sweater which could have filtered "all the gunshot residue." Ex. C5 at 17.

[10] Dr. Arruza opined a tight-packed powdery substance would evince a closer shot. Ex. C5 at 26.

12

>The evidence showed that one of the two gunshots entered her neck, at the base portion of her neck, going directly downward, indicating that she was shot from above.
>
>Medical examiner, Dr. Margarita Arruza, was deposed by counsel, and she indicated just, that, that the second -- or one of the two gunshot wounds went straight down at an angle, indicating that a firearm had to have been above her.
>
>Also of note, Your Honor, she indicated the presence of gunshot residue on her face, her right cheek, indicating that the firearm was, again, above her, pointing downwards, when fired.
>
>That coincides with incriminating statements that the defendant gave, because his statements indicated for many, many hours to the police that he had engaged in a tussle with his wife and wrestled with her over the gun, with it only going off once that struck her. He never was able to explain and, in fact, denied ever holding the gun for many, many hours of interviews, over two separate interviews.
>
>Eventually he did say he picked up the gun, and while standing over her, that it went off when he picked it up, indicating that the last portion of his several hours of interviews that he did, in fact have control of the weapon.
>
>Finally, Your Honor, the weapon was located laying on the victim's crotch area. After being shot twice, the weapon was cocked and ready to be fired a third time, indicating that someone other than herself had control of the weapon, which, of course, we believe to be Mr. Mathews.

Id. at 12-14.

In light of the above, when reviewing the letter of Dr. Sander along with the deposition of Dr. Arruza,[11] the incriminating statements of the Petitioner, the Sworn Statement of inmate Brandon Keith Jenkins, the Sworn Statement of Bufurd A. Pate, and the physical evidence, the Court concludes that Petitioner has not raised sufficient doubt about Petitioner's guilt to undermine the confidence in the result of the proceedings. Thus, when confronted with the letter of Dr. Sander (and the recording of the December 13, 2005 interview and Petitioner's 911 call), the Court is not convinced that Petitioner has satisfied the actual innocence exception. As a consequence, the Court does not find the evidence sufficient to overcome the expiration of the one-year limitation period and the Court will not review the merits of the Amended Petition.

Petitioner may also be attempting to rely on his assertion that he received the ineffective assistance of counsel and an illegal sentence based on a score sheet error. With respect to these two claims, Petitioner has alleged that there is evidence of legal innocence, not factual innocence. This will not save the day. Petitioner must show "factual innocence, not mere legal

---

[11] As noted by Respondents, this Court may consider the timing of the submission, and here there was an inordinate delay in presenting the letter of Dr. Sander to the state and federal courts. The record shows Petitioner waited over three years from the date of the letter to raise the issue in the state court and waited nearly six years to submit the issue to the federal court. See Response at 60-61.

14

insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1012-13 (11th Cir. 2012), cert. denied, 133 S.Ct. 351 (2012). Moreover, the ineffective assistance of counsel and sentencing error claims are presented as the underlying constitutional claims raised in the Amended Petition. Since the Court is not reaching the merits of the Amended Petition, these underlying grounds will not be addressed.

Because Petitioner has not shown an adequate reason why the dictates of the one-year limitation period should not be imposed upon him, this case will be dismissed with prejudice as untimely.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Petitioner's request for an evidentiary hearing, contained in the Amended Petition at 19-21, is **DENIED.**

2. Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely (Doc. 42) is **GRANTED.**

3. The Amended Petition (Doc. 16) is **DISMISSED with prejudice.**

4. The **Clerk** shall enter judgment dismissing the Amended Petition with prejudice and dismissing this case with prejudice.

5. If Petitioner appeals the dismissal of the Amended Petition, the Court denies a certificate of appealability.[12] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

6. The **Clerk** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 3rd day of January, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 12/13
c:
Cecil Bradley Mathews
Counsel of Record

---

[12] If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after due consideration, this Court will deny a certificate of appealability.